RENDERED:  NOVEMBER 7, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0846-MR

COMMONWEALTH OF KENTUCKY,
BY AND THROUGH THE MCLEAN
COUNTY ATTORNEY AND ASHLEY
ANN TAPP[1]                                                                    APPELLANTS


                        APPEAL FROM MCLEAN CIRCUIT COURT
v.                      HONORABLE BRIAN WIGGINS, JUDGE
                        ACTION NO. 14-CI-00044


SPENCER LEE TAPP                                                        APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  EASTON, A. JONES, AND LAMBERT, JUDGES.

JONES, A., JUDGE:  The Commonwealth of Kentucky, by and through the

McLean County Attorney, appeals from an order of the McLean Circuit Court

---

[1] Ashlee's name appears in the record at its inception as "Ashlee Ann Tapp."  At some point, Ashlee's name begins to appear in the record as "Stormi Ashley Tapp."  For consistency, we refer to her as Ashlee.

modifying Spencer Lee Tapp's child support obligation. The Commonwealth contends the trial court abused its discretion by failing to include Spencer's workers' compensation settlement as income and by relying on medical records it claims were improperly admitted. The Commonwealth further argues, for the first time in its reply brief, that the trial court failed to make findings of fact as required by CR[2] 52.01.

Having reviewed the record and the arguments of the parties, we affirm. First, the Commonwealth waived any arguments concerning CR 52.01 when it failed to raise them in its principal appellant's brief. *Seeger Enterprises, Inc. v. Town & Country Bank and Tr. Company*, 518 S.W.3d 791, 796 (Ky. App. 2017). As to the remaining issues, the trial court acted within its discretion in calculating Spencer's child support obligation under KRS[3] 403.212 and .213.

## II. BACKGROUND

Ashlee filed a petition for dissolution of her marriage to Spencer in June 2014. The marriage was dissolved the following year, and their Separation and Property Settlement Agreement was incorporated into the May 15, 2015, decree. Under that agreement, Spencer was ordered to pay $677 per month in child support for the parties' two minor children, born in 2010 and 2013.

---

[2] Kentucky Rules of Civil Procedure.

[3] Kentucky Revised Statutes.

In 2021, the Commonwealth, by and through the McLean County Attorney, intervened in the action after Ashlee requested child support enforcement services. On November 22, 2021, the trial court entered an order increasing Spencer's child support obligation to $893.35 per month, from which no appeal was taken.

On January 8, 2024, the Commonwealth moved to hold Spencer in contempt for failing to pay child support, asserting arrearages of $1,824.96. Spencer responded and filed a motion to modify his child support obligation.[4] He alleged that he had sustained a serious work-related injury in September 2022 that rendered him unable to return to his prior employment as a truck driver. Spencer represented that he was unemployed, had received a $73,000 workers' compensation settlement (netting approximately $64,200), and had used those proceeds to pay debts and child support.

The trial court conducted an evidentiary hearing on April 15, 2024. Mary Cheatham, a McLean County Child Support Worker, testified that she had prepared two child support worksheets—one based on Spencer's prior income, and another, based on his eight percent permanent disability rating. Under both calculations, the difference between the existing and proposed obligations was less

---

[4] He also sought modifications to parenting time and other child rearing issues which arose which are not at issue in the appeal before us.

than fifteen percent, leading Cheatham to conclude that no material change in circumstances existed under KRS 403.213(2). The Commonwealth also introduced photographs depicting Spencer sledding with his children in January 2024 despite appearing in court with a cane.

Spencer testified that he remained under medical care, was unable to work, and had no source of current income. He introduced documentation showing he had been denied unemployment benefits for a two-week period and explained that his workers' compensation settlement had been used to satisfy existing debts, including his child support, and to purchase a used vehicle. He also presented his own child support guideline worksheet, which utilized an imputed minimum-wage income, a forty-hour work week, and the inclusion of Ashlee's SSI benefit for one child; this calculation produced a monthly obligation of $295. At the close of proof, Spencer's counsel referenced medical records purporting to substantiate his physical limitations. Over the Commonwealth's objection, the trial court admitted those records and later relied on them in granting Spencer's motion to modify.

By order entered April 22, 2024, the trial court found Spencer in contempt for nonpayment but reduced his child support obligation to $295 per month, effective January 19, 2024, the date Spencer filed his modification motion. The Commonwealth filed a CR 59.05 motion to alter, amend, or vacate, arguing

-4-

that the trial court failed to include Spencer's workers' compensation settlement as income under KRS 403.212(3)(b) and improperly relied on medical records that Spencer had not formerly moved to introduce. Following a hearing on June 17, 2024, the trial court denied the motion by order entered June 24, 2024. This appeal followed.[5]

## II. STANDARD OF REVIEW

We review a trial court's decisions concerning the establishment or modification of child support for abuse of discretion. *Wilson v. Inglis*, 554 S.W.3d 377, 381 (Ky. App. 2018). "Decisions regarding child support obligations must be fair, reasonable, and supported by sound legal principles." *Seeger v. Lanham*, 542 S.W.3d 286, 298 (Ky. 2018). A court abuses its discretion when its decision is arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Id.*

## III. ANALYSIS

The Commonwealth advances three arguments on appeal. It contends: (1) the trial court erred by failing to include Spencer's workers' compensation settlement as income when calculating his 2024 child support obligation; (2) the trial court abused its discretion by admitting Spencer's medical

---

[5] The Commonwealth states it is appealing from the circuit court's April 22, 2024, order, as well as its June 24, 2024, order. There is no appeal from a denial of a motion to alter, amend, or vacate. The denial of the order does not alter the judgment. The appeal is from the underlying judgment, not the denial of the CR 59.05 motion. *Ford v. Ford*, 578 S.W.3d 356, 366 (Ky. App. 2019).

-5-

records and accepting his testimony that he was unable to work; and (3) the trial court's order lacked the findings of fact required by CR 52.01. Because the third issue concerns preservation and the scope of our review, we address it first before turning to the remaining substantive claims.

A trial court should make findings of fact when a motion for modification of a support or maintenance decree is granted. *Mullins v. Mullins*, 584 S.W.2d 601 (Ky. App. 1979). The requirement is codified in CR 52.01, which mandates that "[i]n all actions tried upon the facts without a jury, . . . the court shall find the facts specifically and state separately its conclusions of law thereon and render an appropriate judgment[.]" The rule imposes an affirmative duty on the trial court to make findings of fact and conclusions of law sufficient to permit meaningful appellate review.

Still, as the Supreme Court recognized in *Anderson v. Johnson*, 350 S.W.3d 453, 458 (Ky. 2011), there is some tension between CR 52.01 and CR 52.04. The latter requires a party to request additional findings when the trial court has omitted an essential fact. Read together, CR 52.01 embodies a burden on both the court and the litigant: a trial court must make findings in all actions tried upon the facts, but a party must request any omitted finding "essential to the judgment" if it intends to challenge the omission on appeal. Thus, if the trial court makes some findings but omits a finding a party deems to be essential to the judgment,

the party must ask the trial court for additional findings or forever be barred from raising the issue. *Id.* However, where a trial court makes no findings at all, an appellate court may remand for compliance with CR 52.01 even if the party did not move the trial court for additional findings. *Id.*

Arguably, the order before us could be characterized as falling within the narrow exception identified in *Anderson* thereby excusing the Commonwealth's failure to request additional findings from the trial court. That circumstance, however, does not relieve the Commonwealth of its obligation to present the argument in its appellant's brief before this Court. Only by doing so does an appellant provide notice to the appellee and afford a meaningful opportunity to respond. The Commonwealth did not mention the lack of findings in its main brief; it raised the issue for the first time in its reply brief, effectively cutting off Spencer's ability to address it. Notice and an opportunity to be heard are the hallmarks of a fair appellate process, and we will not countenance such sandbagging via a reply brief.

"The reply brief is not a device for raising new issues which are essential to the success of the appeal." *Catron v. Citizens Union Bank*, 229 S.W.3d 54, 58-59 (Ky. App. 2006) (quoting *Milby v. Mears*, 580 S.W.2d 724, 728 (Ky. App. 1979)). When an issue has been raised for the first time in a reply brief, as it has here, we may consider the issue to have been waived by the appellant. *Seeger*

*Enterprises, Inc.*, 518 S.W.3d at 796. Accordingly, for the purposes of this appeal, we deem the Commonwealth to have waived its claim regarding the trial court's compliance, or lack thereof, with CR 52.01 and will not address its merits.

We now turn to the Commonwealth's argument that the trial court erred by failing to include Spencer's 2023 workers' compensation settlement when calculating his 2024 child-support obligation.

Under KRS 403.212(3)(b), a parent's "gross income" includes income from any source, including workers' compensation benefits. The settlement Spencer received therefore constituted income for purposes of child support. But as we explained in *Clary v. Clary*, 54 S.W.3d 568, 573-74 (Ky. App. 2001), the trial court retains discretion in how nonrecurring income is treated. A one-time payment must be included in the year it is received, but it need not be projected as continuing income for later years. *Id.* Spencer's $73,000 settlement (netting about $64,200 after fees) was received in November 2023. It was properly considered part of his 2023 income—the period relevant to the Commonwealth's contempt motion based on past arrearages. The modification motion, however, addressed Spencer's circumstances going forward in 2024, when he had lost his job and remained under medical restrictions.

The trial court's written order offered little explanation for its ruling, stating only that "a modification of Respondent's child-support obligation is

warranted" and attaching a completed CS-71 worksheet.[6] From that exhibit, however, it appears the court imputed to Spencer a monthly gross income of approximately $1,257—consistent with full-time, minimum-wage employment. Thus, although the order lacked detailed findings, it reflects the court's acceptance of Spencer's testimony that he was unable to return to truck-driving work and its decision to impute only minimum-wage earnings.

KRS 403.212(3)(e) authorizes a court to determine potential income when a parent is unemployed or underemployed, and subsection (3)(e)3. directs the court to consider the parent's assets, work history, education, health, and the local labor market. Spencer did not dispute the imputation of some income; he himself submitted a child-support worksheet using minimum wage for a forty-hour workweek. Given the evidence of his injury and medical limitations, the trial court's choice to impute only minimum-wage income was a reasonable exercise of discretion. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003).

Past income—including the 2023 settlement—was not predictive of Spencer's future earning capacity. KRS 403.212 must be applied in light of *Keplinger v. Keplinger*, 839 S.W.2d 566, 569 (Ky. App. 1992), which presumes future income will approximate a worker's most recent experience, but that

---

[6] The trial court did not specify that it was incorporating these numbers as its findings of fact, but it certainly would have been permissible for it to do so. *Smith v. McCoy*, 635 S.W.3d 811, 817 (Ky. 2021).

presumption yields when the worker's circumstances materially change. Here, Spencer's disabling injury constituted such a change. As *Clary* makes clear, a trial court may deviate from strict guideline calculations where application of nonrecurring income would be "unjust or inappropriate." 54 S.W.3d at 574. Spencer credibly testified that he used the settlement to pay debts, satisfy child-support arrears, and purchase a modest vehicle—facts supporting the trial court's conclusion that the payment did not represent ongoing earning capacity.

While conflicting evidence existed regarding Spencer's ability to work and his current limitations, due regard must be given to the trial court's opportunity to judge witness credibility. *Moore*, 110 S.W.3d at 354. We will not disturb a trial court's ruling where it is supported by substantial evidence merely because other evidence in the record might support a different outcome. *Id.*

Accordingly, the trial court did not abuse its discretion in declining to treat Spencer's 2023 workers' compensation settlement as recurring income for 2024 and in imputing only minimum-wage earnings when modifying his child-support obligation.

The statutory framework governing modification of child support is set forth in KRS 403.213. Subsection (1) provides that "[t]he provisions of any decree respecting child support may be modified only as to installments accruing subsequent to the filing of the motion for modification and only upon a showing of

-10-

a material change in circumstances that is substantial and continuing." Thus, a party seeking to modify a decree that addresses child support must demonstrate that a substantial and ongoing material change has occurred since the entry of that decree. The burden of proof rests with the moving party. *Wilson*, 554 S.W.3d at 382. However, KRS 403.213(2) further provides that when "[a]pplication of the Kentucky child support guidelines to the circumstances of the parties at the time of the filing of a motion or petition for modification of the child support order . . . results in equal to or greater than a fifteen percent (15%) change in the amount of support due per month [it] shall be rebuttably presumed to be a material change in circumstances."

Here, the record reflects that applying the child-support guidelines to Spencer's imputed minimum-wage income produced an obligation of $295 per month—more than a 15 percent reduction from his prior obligation of $893.35. Under KRS 403.213(2), that discrepancy created a rebuttable presumption of a substantial and continuing change in circumstances sufficient to justify modification. The trial court was entitled to conclude that the presumption was not rebutted, and that Spencer had carried his burden of demonstrating a material change in circumstances warranting a reduction in support.

Finally, we turn to the Commonwealth's argument regarding the trial court's admission and reliance on Spencer's medical records. The Commonwealth

contends that the trial court erred by admitting Spencer's medical records into evidence. According to the Commonwealth, those records were never formally introduced during the evidentiary portion of the April 15, 2024, hearing and had not been admitted at any previous hearing. It argues that the trial court improperly accepted the records during closing argument after Spencer's counsel referenced them and claimed they had already been introduced by the Commonwealth at an earlier proceeding. Over the Commonwealth's objection, the trial court had the records marked as Defendant's Exhibit 5 and relied on them when granting the modification. The Commonwealth maintains that this *sua sponte* admission of the medical records was improper and constituted an abuse of discretion.

Spencer responds that no abuse of discretion occurred because both parties had referenced and relied on the medical records throughout the proceedings. The records had been exchanged in discovery, listed as potential exhibits in Spencer's pretrial compliance, and specifically requested by the Commonwealth in its January 2024 Request for Production of Documents. Spencer emphasizes that the Commonwealth received the records well before the hearing and even cited them during argument, undercutting its claim of surprise or prejudice.

According to Spencer, the trial court acted within its discretion to have the records marked and admitted given that both parties had referred to them

during the hearing. He further notes that the Commonwealth did not object at the time they were admitted—its only subsequent statement was a request to set arrearage payments—and therefore failed to preserve the issue for appellate review.

We are not persuaded that reversal is warranted. Even if the formal admission of the records was procedurally imperfect, it was apparently the product of an oversight. Before the appeal was perfected, the trial court ensured the records were formally marked and entered into the record. "The trial judge has wide discretion to admit or exclude evidence." *Baptist Healthcare Sys., Inc. v. Miller*, 177 S.W.3d 676, 680 (Ky. 2005); *Branham v. Rock*, 449 S.W.3d 741, 745 (Ky. 2014). The admission of these records, which both parties had referenced and exchanged in discovery, fell comfortably within that discretion.

Additionally, the trial court's decision can be sustained on the remaining evidence. Spencer testified under oath concerning his work-related injury, medical restrictions, and inability to resume truck-driving work. The court also received documentary evidence of his unemployment determination, his use of the workers' compensation proceeds to satisfy debts and child-support arrears, and his guideline worksheet reflecting full-time, minimum-wage employment. That evidence, standing alone, provided an adequate basis for the court's finding that Spencer was no longer earning at his pre-injury level.

-13-

Accordingly, even if the medical records were admitted belatedly, the trial court's ruling was within its discretion, and any error was harmless because the same conclusion was supported by substantial, properly admitted evidence.

## IV. CONCLUSION

For the foregoing reasons, we affirm the order of the McLean Family Court modifying Spencer's child-support obligation.

ALL CONCUR.

BRIEFS FOR APPELLANT
COMMONWEALTH OF
KENTUCKY, BY AND THROUGH
THE MCLEAN COUNTY
ATTORNEY:

Donna Dant
Calhoun, Kentucky

BRIEF FOR APPELLEE:

Tyler H. Johnson
Nicole Strohmeyer
Owensboro, Kentucky